FILED & ENTERED

APR 01 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:11-bk-60249-RK |
| ROBERT LEONARD KAPLAN, | Chapter 7 |
| Debtor. | Adv. No. 2:12-ap-01415-RK |
| RENEWABLE RESOURCES COALITION, INC., ARTHUR HACKNEY, and HACKNEY & HACKNEY, INC., | MEMORANDUM DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT, DEFENDANT'S MOTION TO DISMISS AND DEFENDANT'S MOTION TO STRIKE |
| Plaintiffs, | |
| vs. | |
| ROBERT LEONARD KAPLAN, | |
| Defendant. | |

Pending before the court is the Motion for Summary Judgment of Plaintiffs Renewable Resources Coalition, Inc. ("RRC"), Arthur Hackney ("Mr. Hackney), and Hackney & Hackney, Inc., (collectively, "Plaintiffs"), ECF 43, the Motion for Summary Judgment of Defendant Robert Leonard Kaplan ("Mr. Kaplan" or "Defendant"), ECF 80, (collectively, the "Cross-Motions"), Mr. Kaplan's Motion to Dismiss, ECF 171, and Mr. Kaplan's ex parte motion to strike and defendant's response to plaintiffs' supplemental reply re plaintiffs' motion for summary judgment, ECF 177.  Stephen W. Cusick, of the

law firm of Nielsen, Haley & Abbott LLP, and D. Edward Hays, of the law firm of

Marshack Hays LLP, appeared on behalf of Plaintiffs. Leslie A. Cohen, of the law firm of

Leslie Cohen Law, PC, appeared on behalf of Defendant.

On April 15, 2013, Plaintiffs filed their Motion for Summary Judgment, ECF 43, and

on August 30, 2013, Defendant filed his own Motion for Summary Judgment, ECF 80. At

the November 6, 2013 hearing on the Cross-Motions, the court granted the parties leave

to submit supplemental briefing on seven questions raised in the court's tentative ruling

prior to the hearing. Plaintiffs filed that supplemental briefing on November 27, 2013,

ECF 92, and Defendant filed a reply to the supplemental briefing on December 18, 2013,

ECF 99.

The next hearing on the Cross-Motions was continued from time to time by

stipulation and order. On July 30, 2014, the parties submitted a "Statement of

Uncontroverted Facts on Cross-Motions for Summary Judgment." ECF 127. On August

12, 2014, the parties submitted supplemental briefing incorporating the uncontroverted

facts, ECF 128-129, and on August 26, 2014, the parties filed replies to those

supplemental briefs. ECF 130-131.

A hearing on the Cross-Motions was held on September 23, 2014, and the court

ordered additional briefing on *Crawford v. Gould*, 56 F.3d 1162 (9th Cir 1995), which

discussed the ability of a plaintiff to request relief beyond what was explicitly sought in the

pleadings. The parties submitted supplemental briefing on October 7, 2014, ECF 137-

138, and replies to those briefs on October 7 and 21, 2014, ECF 139-140.

On December 8, 2014, Plaintiffs filed a Motion for Leave to File a Second

Amended Complaint. ECF 142. At the January 6, 2015 hearing on the Motion for Leave

to File a Second Amended Complaint, the court orally granted the Motion for Leave to

File a Second Amended Complaint for the limited purpose of amending Plaintiffs' 11

U.S.C. § 523(a)(4) claim. On January 7, 2015, Plaintiffs filed their Modified Second

Amended Adversary Complaint to Determine Dischargeability of Debt and for Judgment

Against Debtor Under 11 U.S.C. § 523(a)(4) and (a)(6) ("Modified Second Amended

Complaint"). ECF 158.  On January 8, 2015, the court entered an order reflecting the oral ruling from the January 6, 2015 hearing, which granted the motion "to the extent that Plaintiffs are given leave to file a Modified Second Amended Complaint changing the claim under 11 U.S.C. § 523 (a)(4) to a claim of embezzlement."  ECF 159.  That order also continued the hearings on the Cross-Motions to March 5, 2015.

On January 22, 2015, Defendant filed a Motion to Dismiss Adversary Proceeding. ECF 171.  On February 17, 2015, Plaintiffs filed an opposition to Mr. Kaplan's Motion to Dismiss.  ECF 173.  On February 19, 2015, Defendant filed an opposition to Plaintiffs' Motion for Summary Judgment.  ECF 174.  On February 24, 2015, Defendant filed a reply to Plaintiffs' opposition to his Motion to Dismiss.  ECF 175.  On February 26, 2015, Plaintiffs filed a reply to Defendant's Motion for Summary Judgment.  ECF 176.

Prior to the scheduled hearing on March 5, 2015, the court took the Motion to Dismiss and Cross-Motions under submission and vacated the hearings.

Subsequently, on March 9, 2015, Defendant filed an ex parte motion to strike and defendant's response to plaintiffs' supplemental reply re plaintiffs' motion for summary judgment.   ECF 177.  On June 5, 2015, Defendant filed a supplemental brief re adversary proceedings, motion to strike, and motions for summary judgment.  ECF 179. On August 12, 2015, Plaintiffs filed an opposition to Defendant's supplemental brief re adversary proceedings, motion to strike, and motions for summary judgment, ECF 181, and Defendant filed a reply thereto on October 7, 2015, ECF 184.  Afterwards, the matters were again taken under submission.

## UNCONTROVERTED FACTS

The parties filed the "Uncontroverted Facts on Cross-Motions for Summary Judgment" on July 30, 2014 ("Uncontroverted Facts").  ECF 127.  At a hearing on the Cross-Motions on September 23, 2014 at 3:00 p.m., the court ruled on the Uncontroverted Facts, and adopted Defendant's Uncontroverted Facts because they were not opposed by Plaintiff.  *Transcript of September 23, 2014 Hearing*, ECF 135 at

61:2-4.  The court reserved ruling on Plaintiffs' 43 Uncontroverted Facts, and now rules on them as follows:

Plaintiffs' Uncontroverted Facts 1-26, 28-32, 34-38, and 40-43 are deemed undisputed.

Plaintiffs' Uncontroverted Fact 27 is deemed undisputed, except that each reference to "Robert Kaplan" shall read "Robert Kaplan, on behalf of FRI," as discussed at the September 23, 2014 hearing.  *Transcript of September 23, 2014 Hearing*, ECF 135 at 23:9-18.

Plaintiffs' Uncontroverted Fact 33 is deemed undisputed, except that the amount of $1,070,301.68 should read $1,070,301.98.

Plaintiffs' Uncontroverted Fact 39 based on the deposition testimony of Allan J. Kaplan is deemed undisputed after the court reviewed the deposition transcript. Deposition of Allan J. Kaplan, September 22, 2010*, Declaration of Stephen W. Cusick and Exhibits A through X in Support of Motion for Summary Judgment, ECF 39-4, Exhibit U.

**DISCUSSION**

A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.  A fact is "material" if it might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute over such facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party.  *Id.*  Thus, to the extent that there is a "mixed question of fact and law and the only disputes relate to the legal significance of undisputed facts, the controversy collapses into a question of law suitable to a disposition on summary judgment."  *Thrifty Oil Co. v. Bank of America National Trust & Savings Association*, 322 F.3d 1039, 1046 (9th Cir. 2002).

1    The moving party must show from the record that there is an absence of evidence

2    to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

3    (1986).  In determining whether genuine issues of material fact exist, the evidence must

4    be viewed in the light most favorable to the non-moving party.  *Tarin v. County of Los*

5    *Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997).  Once the moving party has demonstrated

6    that no genuine issue of material fact exists, the nonmoving party "must go beyond the

7    pleadings and . . . designate specific facts showing that there is a genuine issue for trial."

8    *Celotex Corp. v. Catrett*, 477 U.S. at 324.

9    Plaintiffs in their Motion for Summary Judgment argue that they are entitled to

10   summary judgment on their claims under 11 U.S.C. § 523(a)(4) based on embezzlement

11   and 11 U.S.C. § 523(a)(6) based on willful and malicious injury.

12   As the parties seeking a determination that the debt is excepted from discharge

13   under 11 U.S.C. §§ 523(a)(4) and (a)(6), Plaintiffs bear the burden of proving their claims

14   by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 289 (1991).

15   Under 11 U.S.C. § 523(a)(4), a debt proven for embezzlement by an individual

16   debtor is excepted from discharge.  "Embezzlement is the fraudulent appropriation of

17   property by a person to whom such property has been intrusted, or into whose hands it

18   has lawfully come."  *Moore v. United States*, 160 U.S. 268, 269 (1895).  Proving

19   embezzlement for purposes of 11 U.S.C. § 523(a)(4) requires three elements: (1)

20   property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the

21   property to a use other than which it was entrusted; and (3) circumstances indicating

22   fraud.  *In re Littleton,* 942 F.2d 551, 555 (9th Cir. 1991).  Proving embezzlement for

23   purposes of 11 U.S.C. § 523(a)(4) does not require the existence of a fiduciary

24   relationship.  *Id.*

25   Under 11 U.S.C. § 523(a)(6), a debt proven for willful and malicious injury by an

26   individual debtor to another" or "to property of another" is excepted from discharge.  An

27   injury is "willful" "when it is shown that either the debtor had a subjective motive to inflict

28

5

injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." *Petralia v. Jercich* (*In re Jercich*), 238 F.3d 1202, 1208 (9th Cir. 2001). "Willful" intent does not require that the debtor have had the specific intent to injure the creditor, if the act was intentional and the debtor knew that it would necessarily cause injury. *Id.* at 1207. "Willful" means "voluntary" or "intentional," *Kawaahau v. Geiger*, 523 U.S. 56, 61 n. 3 (1998), and so recklessness or negligence is insufficient; the debtor must not only have *acted* willfully, but also *inflicted the injury* willfully. 523 U.S. at 61-62, *citing* Restatement (Second) of Torts, § 8A, comment A (1964). The standard focuses on the debtor's subjective intent, and not "whether an objective, reasonable person would have known that the actions in question were substantially certain to injure the creditor." *Carrillo v. Su* (*In re Su*), 290 F.3d 1140, 1145-1146 (9th Cir. 2002).

The "malicious" injury requirement under 11 U.S.C. § 523(a)(6) is separate from the "willful" requirement. *In re Su*, 290 F.3d at 1146. An injury is "malicious" if it involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Jercich*, 238 F.3d at 1209, *citing, Kawaahau v. Geiger, supra*. This definition "does *not* require a showing of biblical malice, i.e., personal hatred, spite, or ill-will." *Murray v. Bammer* (*In re Bammer*), 131 F.3d 788, 791 (9th Cir. 1997) (emphasis in original). The intent required is the intent to do the act at issue, not the intent to injure the victim. *Id.*

As discussed herein, based on the uncontroverted facts presented in the evidence in the record, the court determines that Plaintiffs are entitled to summary judgment as a matter of law with respect to their claims under 11 U.S.C. §§ 523(a)(4) and (a)(6).

## BACKGROUND

On April 4, 2008, Fund Raising Inc. ("FRI"), a California corporation through which Mr. Kaplan conducts business, entered into a consulting agreement with Mr. Hackney, Hackney & Hackney, Inc., Alaskans For Clean Water, Inc., RRC, and Renewable Resources Foundation, Inc., with an effective date of April 1, 2008. Declaration of

Stephen W. Cusick and Exhibits A Through X in Support of Motion For Summary

Judgment, ECF 39, Exhibit G.

On or about October 24, 2008, FRI initiated an arbitration proceeding before

JAMS, one of the arbitration firms specified in the consulting agreement, through a

Demand for Arbitration Before JAMS.  *Id.* at Exhibit C.  Through the Demand for

Arbitration Before JAMS, FRI asserted claims for breach of contract, fraud and deceit,

interference with prospective business advantage, breach of the implied covenant of

good faith and fair dealing, and bad faith against respondents RRC, Renewable

Resources Foundation, Inc., Alaskans for Clean Water, Inc., Successor or Related

Entities, Richard Jameson, Luki Akelkok, Jack Honson, Francis Gallela, John Holman

and Brian Kraft.  *Id.*  On May 13, 2010, in the arbitration proceeding, RRC filed a

counterclaim that asserted causes of action for breach of contract against FRI only, and

causes of action for professional negligence, interference with prospective economic

advantage, and unjust enrichment against both FRI and Mr. Kaplan.  *Id.* at Exhibit E.  On

July 23, 2010, Mr. Hackney and Hackney & Hackney, Inc. filed a counterclaim against

FRI in the arbitration proceeding which also asserted causes of action for breach of

contract against FRI only, and causes of action for professional negligence, interference

with prospective economic advantage, and unjust enrichment against both FRI and Mr.

Kaplan.  *Id.* at Exhibit F.

On December 9, 2011, Mr. Kaplan filed a voluntary petition for relief under Chapter

7 of the Bankruptcy Code, 11 U.S.C.  2:11-bk-60249-EC.  ECF 1.

On December 30, 2011, FRI filed a petition to vacate the arbitration award, which

was then an interim arbitration award, in the United States District Court for the Central

District of California.  Declaration of Stephen W. Cusick and Exhibits A Through X in

Support of Motion For Summary Judgment, ECF 39, Exhibit I.  On January 6, 2012, the

arbitration proceeding concluded with a Final Award against FRI in the amount of

$8,889,613.  *Id.* at Exhibit A.  On January 10, 2012, Plaintiffs filed a Notice of Final Award

in the District Court action in which FRI was then moving to vacate an earlier version of

the same award.  *Fund Raising Inc. v. Alaskans For Clean Water, Inc.,* No. 2:09-CV-04106 AHM-VBKx (C.D. Cal.), Docket No. 86.

On March 19, 2012, Plaintiffs initiated the instant adversary proceeding by filing a complaint against both Mr. Kaplan and FRI to determine dischargeability of debt under 11 U.S.C. §§ 523(a)(2), (a)(4) and (a)(6), for confirmation of arbitration award and entry of judgment, and to add Mr. Kaplan to the judgment as a judgment creditor, as an alter ego of FRI.  ECF 1.  On July 31, 2012, Plaintiffs filed their first amended complaint against Mr. Kaplan only to determine dischargeability of debt under 11 U.S.C. §§ 523(a)(2), (a)(4) and (a)(6).  ECF 24.  On December 8, 2014, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint, ECF 142, which the court granted per order entered on January 8, 2015, ECF 159.

On July 3, 2012, in the bankruptcy case, Plaintiffs moved for relief from the automatic stay in order to proceed in the federal district court, 2:09-CV-04106 AHM-VBKx, to attempt to add Mr. Kaplan to a judgment Plaintiffs asserted was about to be entered therein.  2:11-bk-60249-RK, ECF 25.  At the August 7, 2012 hearing on the motion for relief from stay, Plaintiffs agreed to withdraw their motion for relief such that the alter-ego issue would be decided by this court.  Audio File of Mr. Cusick at hearing on Plaintiffs' motion for relief from the automatic stay, August 7, 2012, at 10:58 a.m. – 11:00 a.m.

On July 31, 2012, the District Court, by the Honorable A. Howard Matz, entered a judgment confirming the arbitration award and awarding $3,257,953.00 to Renewable Resources Coalition Inc. and $5,631,659.02 to Arthur Hackney and Hackney & Hackney, Inc. jointly.  *Id.* at Exhibit K.

On August 14, 2012, the court entered an order on and withdrawal of Plaintiffs' motion for relief from the automatic stay.  ECF 34.

## STATUTE OF LIMITATIONS

As a preliminary matter, Mr. Kaplan argues that Plaintiffs' claims are time-barred under California Civil Code § 3426.6 and California Code of Civil Procedure § 338.

Defendant's Supplemental Brief Re Adversary Proceedings, Motion to Strike, and Motions for Summary Judgment, ECF 179.  In California, "[a]n action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."  California Civil Code § 3426.6.  An action for conversion is similarly governed by a three-year statute of limitations.  California Code of Civil Procedure § 338.

It is undisputed that the Alaskan Public Officials Commission ("APOC") Complaint, as discussed in more detail later, was filed on March 19, 2009, and that RRC board member Richard Jameson recognized many of the exhibits to the APOC Complaint as documents provided to Mr. Kaplan during his retention, and that "[t]he week of March 19, 2009, was when Renewable Resources Coalition first learned that Robert Kaplan had carried through on his threats and had actually provided his former clients' documents to his former clients' opponents, for use against his former clients."  Plaintiffs' Uncontroverted Facts 29-31.  From these undisputed facts, the court infers that RRC first learned of the misappropriation on March 19, 2009, when the APOC complaint was filed, and this action, which was brought on March 19, 2012, was therefore brought within the applicable three-year statute of limitations.

## SECOND AMENDED COMPLAINT

As another threshold matter, Defendant's Supplemental Opposition to Plaintiffs' Motion for Summary Judgment argues that Plaintiffs' Motion for Summary Judgment cannot proceed because an amended complaint has been filed that mooted all pleadings related to the first amended complaint.  ECF 174 at 3-4.  Nonetheless, Defendant has not cited, nor has the court found, any binding legal authority that requires, as a per se matter, the court to treat Plaintiffs' Motion for Summary Judgment as moot because of the subsequent filing of Plaintiffs' Modified Second Amended Complaint.  At the January 6, 2014 hearing, the court stated that the purpose of the Motion for Leave to File a Second Amended Complaint was to clean-up the second amended complaint with respect to the 11 U.S.C. § 523(a)(4) claim and in granting that motion, the court stated that "everything

else will [ ] remain the same except maybe the renumbering of paragraphs." Audio File of

hearing on Motion for Leave to File a Second Amended Complaint, January 6, 2015, at

3:33 p.m.  Accordingly, the court determines that Defendant's hyper-technical argument

lacks legal support, that Plaintiffs' would be unduly prejudiced if they had to refile all of

the pleadings related to their motion for summary judgment, that Defendant is not unduly

prejudiced by the modification, and therefore, the court denies Defendant's request to

treat Plaintiffs' Motion for Summary Judgment as moot.

Further, Defendant's Supplemental Opposition to Plaintiffs' Motion for Summary

Judgment also argues that Plaintiffs' Motion for Summary Judgment cannot proceed

because the Modified Second Amended Complaint raises new claims on which

Defendant must be permitted to take discovery. *Id.* at 4.  Nonetheless, Defendant has

not specifically addressed what discovery is needed.  Based upon a thorough review of

the record, the court determines that such additional discovery is not necessary.  The

parties have been entitled to take discovery through both the arbitration proceeding and

this adversary proceeding, and the parties are thoroughly familiar with the facts, which

are generally established in the prior arbitration proceedings and thus not controverted,

and thus, there would be no surprises for Defendant.  Specifically, the property that is the

subject of the embezzlement claim—the confidential documents, as described in more

detail below, and the transfer thereof—is also the subject of the 11 U.S.C. § 523(a)(4)

and 524(b)(2) claims for breach of fiduciary duty and the 11 U.S.C. § 523(a)(6) claim for

willful and malicious injury, all of which were set forth in the original complaint.  ECF 1.

Accordingly, the court determines that Defendant has not been unduly prejudiced as to

their discovery rights.

## ISSUE PRECLUSION

Plaintiffs rely on both issue preclusion and other evidence to prove that they are

entitled to summary judgment on their claims under 11 U.S.C. § 523(a)(4) based on

embezzlement and 11 U.S.C. § 523(a)(6) based on willful and malicious injury.  ECF 43.

Plaintiffs seek to apply issue preclusion to the final judgment of an arbitration award that

10

1   was later confirmed by the district court.  *Id.*  This raises the preliminary matter of whether

2   the court should apply issue preclusion based on California or federal law.

3        "Under federal common law, a federal diversity judgment is to be accorded the

4   same preclusive effect that would be applied by the state courts in the state in which the

5   federal diversity court sits."  *In re Cass*, 2013 WL 1459272, at *10 (9th Cir. BAP 2013),

6   *affirmed*, 606 Fed.Appx. 318 (9th Cir. 2015), *citing Haliburton Energy Services., Inc. v.*

7   *McVay (In re McVay)*, 461 B.R. 735, 741 (Bankr. C.D. Ill. 2012); *Jacobs v. CBS*

8   *Broadcasting, Inc.*, 291 F.3d 1173, 1177 (9th Cir. 2002).  Because the federal court that

9   confirmed the arbitration award exercised its diversity jurisdiction, the court determines

10  that it should apply California's collateral estoppel law.

11       Nonetheless, this raises an issue of the applicability of California's issue

12  preclusion law where the former judgment is based on an arbitration award.  "There is a

13  split of authority on whether collateral estoppel (issue preclusion in later lawsuit on

14  *different* cause of action) applies to a judgment based on a judicial arbitration award."  3

15  Weil and Brown, *California Practice Guide: Civil Procedure Before Trial*, ¶ 13:134.1 at 13-

16  51 (2011), *citing inter alia*, *Vandenberg v. Superior Court* (*Centennial Insurance Co.*), 21

17  C.4th 815, 824 (1999); *see also, Brinton v. Bankers Pension Services*, 76 Cal.App.4th

18  550, 556-557 (1999).  As detailed below, a review of California case law demonstrates

19  that although there may be some difference in opinion among the California courts

20  regarding when to give issue preclusive effect to findings made during an arbitration

21  proceeding, rather than applying per se rules, California courts consistently consider

22  certain factors that are primarily concerned with fairness based on the adjudicatory

23  nature of the particular arbitration proceeding.

24       In *Vandenberg v. Superior Court*, 21 Cal.4th 815 (1999), the last time the

25  California Supreme Court addressed the issue preclusive effect of an arbitration award,

26  that court held that "a private arbitration award, even if judicially confirmed, may not have

27  nonmutual collateral estoppel effect under California law unless there was an agreement

28  to that effect in the particular case."  21 Cal.4th at 824.  In *Vandenberg*, lessor sued its

former lessee in state court in an action related to property damage from pollution. *Id.* at

825. Lessor alleged causes of action for breach of contract, breach of the covenant of

good faith and fair dealing, public and private nuisance, negligence, waste, trespass,

strict liability, equitable indemnity, declaratory relief, and injunctive relief. *Id.* Lessee,

who had obtained commercial general liability insurance, tendered defense of the state

court action to his insurers, but only USF&G agreed to provide defense. *Id.* at 826.

Subsequently, the parties agreed to resolve their breach of lease issues only through

arbitration and USF&G agreed to defend lessee at the arbitration proceeding but also

agreed that issues regarding USF&G's coverage and indemnity obligations, as well as a

claim by lessee for counsel fees, were reserved for future resolution. *Id.* The arbitrator

ruled for lessor and the award was confirmed by the superior court. *Id.* USF&G then

rejected lessee's request for indemnification. *Id.* Subsequently, lessee brought suit

against USF&G and other insurers asserting various causes of action arising out of the

failure to defend, settle, or indemnify in the arbitration proceeding. *Id.* The insurers filed

two motions for summary judgment, with the pertinent motion arguing that the insurers

had no duty to defend or indemnify defendant based on issue preclusion of the

arbitrator's determination that the contamination was not sudden or accidental, a

determination which excluded coverage under USF&G's and other insurers' policies. *Id.*

at 826-827. The trial court granted insurers' motion for summary judgment based on

issue preclusion. *Id.* at 827. At the first level of appeal, the California Court of Appeal in

*Vandenberg* issued peremptory writs of mandate reversing the summary judgment order.

*Id.*

At the next level of appeal, the California Supreme Court in *Vandenberg*

commented in general on whether a prior proceeding should be given issue-preclusive

effect in a later judicial action in California:

> Whether collateral estoppel is fair and consistent with public policy in a
> particular case depends in part upon the character of the forum that first
> decided the issue later sought to be foreclosed. In this regard, courts
> consider the judicial nature of the prior form, i.e., its legal formality, the

1    scope of its jurisdiction, and its procedural safeguards, particularly including
2    the opportunity for judicial review of adverse rulings.

3    *Id.* at 829.  However, with respect to private arbitration, the California Supreme Court in

4    *Vandenberg* stated that "the traditional justification for collateral estoppel factors which

5    'strongly influence whether its application in a particular circumstance would be fair to the

6    parties and constitute[ ] sound [public] policy' – have diminished force when the

7    nonmutual prong of the doctrine is applied to private arbitration without the arbitral

8    parties' specific consent."   *Id.*   "Moreover, because private arbitration does not involve

9    the use of a judge and a courtroom, later relitigation does not undermine judicial

10   economy by requiring duplication of judicial resources to decide the same issue."  *Id.*

11   Based upon the foregoing reasoning, the California Supreme Court affirmed the Court of

12   Appeal's holding, stating "we are compelled to conclude that a private arbitration award,

13   even if judicially confirmed, can have no collateral estoppel effect in favor of third persons

14   unless the arbitral parties agreed, in the particular case, that such a consequence should

15   apply."  *Id.* at 834.  Nonetheless, in a footnote to that holding, the California Supreme

16   Court in *Vandenberg* stated that "[o]ur holding is narrowly circumscribed.  Nothing in our

17   decision imposes or implies any limitations on the strict res judicata, or 'claim preclusive,'

18   effect of a California law private arbitration award. . . <u>We also do not address the</u>

19   <u>circumstances, if any, in which a private arbitration award may have 'issue preclusive'</u>

20   <u>effect in subsequent litigation between the *same* parties on different causes of action</u>."

21   *Id.* at 845 n. 2 (italics in original; emphasis added; citations omitted).

22        In *Brinton v. Bankers Pension Services*, 76 Cal.App.4th 550 (1999), another

23   California Court of Appeal, about three months after the *Vandenberg* decision was

24   rendered, declined to follow the *Vandenberg* holding that in order for a private arbitration

25   award to have collateral estoppel effect in favor of third persons, the arbitral parties must

26   agree so.  76 Cal.App.4th at 556-557.  In *Brinton*, an investor brought an action against a

27   company with whom an investor had a retirement account asserting causes of action for

28   fraud, negligent misrepresentation and breach of fiduciary duty to recover for

13

unsuccessful investments in five limited partnerships. *Id.* at 553-554. The investor had

established a retirement account with one of the company's officers, who also worked as

a broker for a securities dealership. *Id.* at 555. Initially the investor filed a statement of

claim with the National Association of Securities Dealers, Inc. seeking binding arbitration

against the officer and his securities dealership. *Id.* The company declined to participate

in the arbitration proceeding because it did not have an arbitration agreement with the

investor. *Id.* The arbitration award denied all of the investor's claims. *Id.* The officer and

the securities dealership petitioned the superior court to confirm the arbitration award and

the superior court granted their request and entered a judgment in their favor. *Id.* The

investor appealed the superior court's judgment, and the Court of Appeal affirmed. *Id.*

In *Brinton,* the investor then filed an action against the company. *Id.* The superior

court found that the arbitration proceeding barred the investor's action against the

company concerning the losses the investor suffered on four of the limited partnerships.

*Id.* at 555-556. The investor then appealed this ruling arguing that, among other reasons,

the arbitration award in favor of the officer and the securities dealership should not be

given preclusive effect in favor of the company. *Id.* at 556. The Court of Appeal then

analyzed *Vandenberg* and considered both the above-discussed footnote 2 in

*Vandenberg*, which stated that the holding in the case is to be narrowly circumscribed, as

well as the primary rights theory, which determines that "[t]he existence of a cause of

action 'is based upon the harm suffered, as opposed to the particular theory asserted by

the litigant.'" *Id.* at 556-557. The Court of Appeal in *Brinton* then determined that

because investor's arbitration claim against the officer and the securities dealership, and

the investor's claim against the company sought recovery for the same injury, the

investor's claims were based on the same primary right. Accordingly, because the

company's liability was derivative of the officer's, the Court of Appeal determined that it

was unnecessary for the company to have been a party to the arbitration proceeding to

assert a claim preclusion defense. *Id.* at 557-558.

As shown above, California courts have not established bright line rules on

14

whether to give issue preclusive effect to findings made during an arbitration proceeding. Nonetheless, as indicated by *Vandenberg* and *Brinton*, the California courts are primarily concerned with the fairness of giving issue preclusive effect to findings made during an arbitration proceeding, and in making that determination of fairness, and as further demonstrated below, California courts have consistently examined the fairness of doing so based on the adjudicatory nature of the particular arbitration proceeding.  *See e.g., Vandenberg v. Superior Court*, 21 Cal.4th at 824 ("Whether collateral estoppel is fair and consistent with public policy in a particular case depends in part upon the character of the forum that first decided the issue later sought to be foreclosed."); *Kelly v. Vons Companies*, 67 Cal.App.4th 1329 (1998) (stating that it is "appropriate to give collateral estoppel effect to findings made during an arbitration, so long as the arbitration had the elements of an adjudicatory procedure."); *see also, Camargo v. California Portland Cement Co.*, 86 Cal.App.4th 995 (2001) (*citing Kelly v. Vons Companies, supra,* and stating in dicta that "collateral estoppel is appropriately applied to arbitration as a matter of policy where the arbitration had the elements of an adjudicatory procedure.").

When deciding whether an arbitration proceeding is sufficiently adjudicatory in nature, California courts apply the same standards used to determine whether administrative proceedings should be given issue preclusive effect.  *Kelly v. Vons Companies*, 67 Cal.App.4th at 1336-1337; *see also*, *Vandenberg v. Superior Court,* 21 Cal.4th at 829 (relying on cases discussing the issue preclusive effect of administrative proceedings).  Accordingly, courts examine such factors as the following:

> [W]hether (1) the administrative hearing was conducted in a judicial-like adversary proceeding; (2) the proceedings required witnesses to testify under oath; (3) the agency determination involved the adjudicatory application of rules to a single set of facts; (4) the proceedings were conducted before an impartial hearing officer; (5) the parties had the right to subpoena witnesses and present documentary evidence; and (6) the administrative agency maintained a verbatim record of the proceedings . . . Additional factors include whether the hearing officer's decision was adjudicatory and in writing with a statement of reasons. Finally, was that reasoned decision adopted by the director of the agency with the potential for later judicial review.

*Imen v. Glassford*, 201 Cal. App.3d 898, 906-907 (1988), *citing People v. Sims*, 32 Cal.3d 468, 479-480 (1982); *see also, Kelly v. Vons Companies*, 67 Cal.App.4th at 1336-1337 ("Parties to an arbitration, like parties to administrative hearings, are often afforded the opportunity for a hearing before an impartial and qualified officer, at which they may give formal recorded testimony under oath, cross-examine and compel the testimony of witnesses, and obtain a written statement of decision.  When an arbitration [ ] has these attributes, it is not unjust to bind the parties to determinations made during the proceeding.").

The arbitration proceeding was conducted in a judicial-like adversary proceeding that featured at least seven status conferences, motions *in limine,* testimony as described below, a briefing schedule for written closing arguments, the submission of deposition transcripts, and a 26 page final award that included detailed findings of fact and conclusions of law.   Declaration of Robert Kaplan and Exhibits A Through P In Support of Defendant's Motion for Summary Judgment, ECF 81, Exhibit C.  Witnesses testified under oath, through depositions and declarations, or in person.  *Id.* at 29; Declaration of Stephen W. Cusick and Exhibits A Through FF In Opposition To Debtor Kaplan's Motion for Summary Judgment, ECF 87, at Exhibit G, U and W.  The arbitration proceeding involved the adjudicatory application of JAMS Comprehensive Arbitration Rules and Procedures to a single set of facts.  Declaration of Robert Kaplan and Exhibits A Through P In Support of Defendant's Motion for Summary Judgment, ECF 81, Exhibit C at 28. The proceedings were conducted before the Honorable G. Keith Wisot, a retired California Superior Court judge.  *Id.* at 27-52.  The parties had the right to subpoena witnesses.  ECF 81 at 429, ¶ 28.  Judge Wisot took testimony under oath in person, by declaration and by submitted selections of deposition, including Defendant.  Exhibit A at 11.  It is also unclear from the record whether Judge Wisot maintained a verbatim record of the arbitration proceedings.  Finally, the final arbitration award was 26 pages long and included detailed findings of fact and conclusions of law.  Declaration of Robert Kaplan and Exhibits A Through P In Support of Defendant's Motion for Summary Judgment, ECF

16

81, Exhibit C.  Accordingly, based on the *Imen* and *Kelly* factors, the court determines

that the arbitration proceeding was sufficiently adjudicatory in nature such that it is

appropriate to give issue preclusive effect to findings made during the arbitration

proceeding, so long as the traditional issue preclusive elements are met.

In California, collateral estoppel, or issue preclusion, applies when the following

elements are satisfied:

> (1) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication, (2) there was a final judgment on the merits in the prior action and (3) the issue necessarily decided in the prior adjudication is identical to the one that is sought to be relitigated . . . In addition to these factors, and especially where collateral estoppel is applied 'offensively' to preclude a defendant from relitigating an issue the defendant previously litigated and lost, the courts consider whether the party against whom the earlier decision is asserted had a 'full and fair' opportunity to litigate the issue.

*Roos v. Red*, 130 Cal.App.4th 870, 879-880 (2005), *citing inter alia*, *Coscia v. McKenna

Cuneo*, 25 Cal.4th 1194, 1201 (2001); *Parklane Hosiery Company, Inc. v. Shore,* 439

U.S. 322, 332-333 (1979); and *Kremer v. Chemical Construction Corporation*, 456 U.S.

461, 480-481 (1982).

As set forth in more detail below, Plaintiffs seek to apply issue preclusive effect to

the following findings of fact from the arbitration award: for Plaintiffs' nondischargeability

claim for embezzlement under 11 U.S.C. § 523(a)(4), Plaintiffs rely on Plaintiffs'

Uncontroverted Facts 27 and 40-42; and for Plaintiffs' nondischargeability claim for willful

and malicious injury under 11 U.S.C. § 523(a)(6), Plaintiffs rely on Plaintiffs'

Uncontroverted Facts 22-23, 26, 28-29 and 33.

A.    Privity

Under California law, in the claim and issue preclusion context, "privity" refers:

> "[T]o a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel."  'This requirement of identity of parties or privity is a requirement of due process of law.'  'Due process requires that

> the nonparty have had an identity or community of interest with, and adequate representation by, the . . . party in the first action. The circumstances must also have been such that the nonparty should reasonably have expected to be bound by the prior adjudication . . . .'"

*Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Association*, 60 Cal.App.4th 1053, 1069-70 (1998) (internal citations omitted).

The court determines that for purposes of collateral estoppel, Mr. Kaplan is in privity with FRI.  At the time of both retention and throughout the arbitration proceeding, Mr. Kaplan had a sufficiently close relationship with FRI because Mr. Kaplan was the president, sole shareholder and sole employee of FRI.  Plaintiffs' Uncontroverted Fact 6.  On behalf of FRI, Mr. Kaplan worked from his home to carry out FRI's business and offered no evidence in arbitration that he maintained any corporate formalities.  Plaintiffs' Uncontroverted Fact 7.  Moreover, as a due process matter, notwithstanding the doctrine of respondeat superior, given that employees may be liable for torts committed while acting as an employee, and given that Plaintiffs brought tort counterclaims against FRI for professional negligence, interference with prospective economic advantage and unjust enrichment, Mr. Kaplan, who had counsel throughout the proceeding, should reasonably have expected to be bound by the arbitration proceeding. *See* Marsh, Finkle, and Sonsini, *Marsh's California Corporation Law*, §10.16 at 10-89 (4th ed. 2014); ("[A] corporate officer obviously isn't relieved of personal liability for misappropriating property of another merely because he does it on behalf of his corporate principal."); *Golden v. Anderson*, 256 Cal.App.2d 714, 719-720 (1967) ("The [trial] court found that, since the evidence showed these three defendants were acting in their representative capacities as managing agents of the defendant corporations, they were immune from liability. The court erred in so concluding. Plaintiff's action is for an intentional tort.  All persons who are shown to have participated are liable for the full amount of the damages suffered. 'When conspiring corporate officials act tortiously and individuals are injured as a proximate result, such tortfeasors are liable to the injured persons even though the corporation may also be liable.' (*Price v. Hibbs*, 225 Cal.App.2d 209, 222 [37 Cal.Rptr.

270].).” (internal citations omitted).  Accordingly, the court determines that Mr. Kaplan and

FRI are in privity for purposes of collateral estoppel, or issue preclusion.  Thus, since

privity exists between these parties, the narrow holding in *Vandenberg* that “a private

arbitration award, even if judicially confirmed, may not have nonmutual collateral estoppel

effect under California law, unless there was an agreement to that effect in the particular

case” (21 Cal.4th at 824) does not apply here since this is a situation falling within the

exclusion of footnote 2 in the *Vanderberg* opinion involving the same parties or parties in

privity (“We also do not address the circumstances, if any, in which a private arbitration

award may have ‘issue preclusive’ effect in subsequent litigation between the *same*

parties on different causes of action.”  *Id.* at 845 n. 2 (italics in original; citations omitted)).

Because as discussed herein, summary judgment in favor of Plaintiffs on their

claims and against Defendant should be granted based on privity alone, it is not

necessary to consider Plaintiffs’ alter ego claims as an alternative basis for granting

summary judgment on their claims based on privity.

B.    The Arbitration Award is Final and On the Merits

In the circumstances here, the arbitration award in favor of Plaintiffs and against

FRI (which is in privity with Mr. Kaplan) was confirmed by the United States District Court

for the Central District of California in a final judgment.  Declaration of Stephen W. Cusick

and Exhibits A Through X in Support of Motion for Summary Judgment, ECF 39, Exhibit

A.  Accordingly, the court determines that the element of finality for issue preclusion in

that the arbitration award is final and on the merits.

C.    The Issues Are Identical

Regarding the element of whether the issues necessarily decided in the arbitration

proceeding are identical to the ones that are sought to be relitigated:

> The requirement that there be a substantial identity of issues, sometimes
> referred to as “the substantially the same test,” does not require that all the
> issues in the two proceedings be the same, but, at most, that the issue on
> which the testimony was offered in the first suit must be the same as the
> issue upon which it is offered in the second.  The issues in the two
> proceedings must be sufficiently similar to insure that the opposing party
> had a meaningful opportunity to cross-examine when the testimony was first

19

offered. The rule of admissibility where the issues or subject matter are the same has been applied in the situation where there were two trials of the same case, even though the theory of law at the second trial was or might have been different.

29A Am.Jur.2d Evidence § 915, *citing*, *Gray v. Graham*, 231 Va. 1, 341 S.E.2d 153 (1986), *United States v. King*, 713 F.2d 627 (11th Cir. 1983), *Valdez v. Lyman-Roberts Hosp., Inc.*, 638 S.W.2d 111 (Tex. App. Corpus Christi 1982); *see also, Lockwood v. Superior Court*, 160 Cal.App.3d 667, 671 (1984).

The arbitration award found facts that are identical to the elements required to establish embezzlement under 11 U.S.C. § 523(a)(4). Plaintiffs' Uncontroverted Fact 27 establishes that Defendant gave Attorney Singer, who represented interests adverse to Plaintiffs, clients of his business, FRI, the confidential donor lists, bank account information and contact lists obtained from RRC, a client of his business, FRI, in exchange for a $50,000 check paid to him by Attorney Singer, in breach of the confidentiality agreement between FRI and Plaintiffs, a finding that is identical to the issue of whether Mr. Kaplan appropriated property to a use other than which it was entrusted, the second element of embezzlement under *In re Littleton*. *See also,* Plaintiffs' Uncontroverted Facts 1-26. Further, Plaintiffs' Uncontroverted Facts 40-42 establish that Mr. Kaplan met with Attorneys Amodio and Singer, representing interests adverse to Plaintiffs, to sell RRC's confidential documents to RRC's competitors for use against RRC, and then tried to cover up this fraudulent conduct through invocation of the attorney-client privilege. These uncontroverted facts also establish that Mr. Kaplan committed perjury regarding his reason for contacting Attorneys Amodio and Singer, his purpose for meeting them, and his being surprised at being listed as a consultant in the APOC complaint, findings that are identical to the issue of whether there are circumstances of the embezzlement indicating fraud. Accordingly, because the findings of fact in the arbitration award are identical to findings that are sufficient to support a claim under 11 U.S.C. § 523(a)(4), the court determines that the issues are identical with respect to Plaintiffs' 11 U.S.C. § 523(a)(4) claim.

1    The arbitration award also made factual findings that are identical to the elements

2  required to establish willful and malicious injury under 11 U.S.C. § 523(a)(6).  First,

3  Plaintiffs' Uncontroverted Fact 21 establishes that Mr. Kaplan made multiple implied

4  threats to Plaintiffs about revealing Plaintiffs' confidential documents—for example, "'Mr.

5  Gillam, the primary contributor to the FRI campaign, had 'a lot of reasons' why he would

6  not want the FRI emails to be made public' and – that Kaplan's terms for settlement

7  better 'be accepted or [those] dire consequences . . . would follow.'"  This factual finding,

8  combined with other undisputed facts that Mr. Kaplan later sold those confidential

9  documents to Attorney Singer, *see* Plaintiffs' Uncontroverted Facts 22-23 and 26-27,

10  demonstrate that Mr. Kaplan had a "subjective motive to inflict injury" to Plaintiffs, *In re*

11  *Su*, 290 F.3d at 1145-1146 (9th Cir. 2002), which is identical to the issue of whether Mr.

12  Kaplan acted willfully.

13    Plaintiffs' Uncontroverted Facts 22-23, 26 and 28-29, which are based on factual

14  findings from the arbitration award, combined with other uncontroverted facts, establish

15  that Mr. Kaplan sold the confidential documents of FRI's (or his business's) client, RRC,

16  for $50,000 to Alaska Attorney Singer, who was representing interests adverse to

17  Plaintiffs, clients of his business, FRI, and who then used those confidential documents in

18  a complaint filed before the Alaskan Public Officials Commission against his business's

19  client, RRC, and others, findings that are identical to the issue of whether Mr. Kaplan

20  committed a wrongful act, the first "malicious" element under *In re Su*, *supra*.

21    Further, as demonstrated in the discussion of the willfulness requirement herein,

22  Plaintiffs' Uncontroverted Facts 21, 22-23 and 26-27 are identical to the 11 U.S.C. §

23  523(a)(6) element of whether Mr. Kaplan acted intentionally.

24    Moreover, Plaintiffs' Uncontroverted Fact 33 supported by the other Plaintiffs'

25  Uncontroverted Facts (e.g., Nos. 1-29) establishes that Mr. Kaplan's act of selling the

26  confidential documents of Plaintiffs, the clients of his business, FRI, to Alaska Attorney

27  Singer, representing interests adverse to Plaintiffs, the clients of his business, FRI,

28  necessarily caused injury based upon an "inescapable inference" that the APOC

complaint, which incorporated the confidential documents, and public investigation, was a

causal event that contributed to the cancellation of $386,300 in grant funds to Plaintiff

RRC and loss of clients and revenues to Plaintiff Hackney & Hackney, Inc., for which the

arbitrator awarded the amount of $1,070,301.68.  Accordingly, the court determines that

the finding on which Plaintiffs' Uncontroverted Fact 33 is based upon is identical to the

issue of whether Mr. Kaplan's wrongful act necessarily caused injury to Plaintiffs.  Finally,

based on the foregoing, because the findings of fact in the arbitration award are identical

to the findings sufficient to support a claim under 11 U.S.C. § 523(a)(6), the court

determines that the issues are identical with respect to Plaintiffs' 11 U.S.C. § 523(a)(6)

claim.

D.    Kaplan Had a Full and Fair Opportunity to Litigate

In the context of offensive collateral estoppel,

> [C]ourts have recognized that certain circumstances exist that so undermine the confidence in the validity of the prior proceeding that the application of collateral estoppel would be "unfair" to the defendant as a matter of law. Such "unfair" circumstances include a situation where the defendant had no incentive to vigorously litigate the issue in the prior action, "particularly if the second action is not foreseeable."  Another such circumstance occurs when the judgment in the prior action is inconsistent with previous judgments for the defendant on the matter.  Finally, application of collateral estoppel is unfair where the second action "affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result."

*Roos v. Red,* 130 Cal.App.4th 870, 880 (2005) (internal citations omitted); *see also*, 7

Witkin, *California Proc*edure, Judgment, § 419 at 1064 (5th ed. 2008), *citing Pacific*

*Mutual Life Insurance Co. of California v. McConnell*, 44 Cal.2d 715, 724 (1955) ("[E]ven

though the causes of action be different, the prior determination of an issue is conclusive

in a subsequent suit between the same parties as to that issue and every matter which

might have been urged to sustain or defeat its determination.").  Further, "[i]n the context

of collateral estoppel, due process requires that the party to be estopped must have had

an identity or community of interest with, and adequate representation by, the losing party

in the first action as well as that the circumstances must have been such that the party to

1    be estopped should reasonably have expected to be bound by the prior adjudication."

2    *Clemmer v. Hartford Insurance Co.*, 22 Cal.3d 865, 875 (1978)(citation omitted).

3        The court determines that Mr. Kaplan had a full and fair opportunity to litigate.

4    There is nothing before the court to undermine confidence in the validity of the prior

5    arbitration proceeding as an adjudicatory proceeding.  Rather, the arbitration proceeding

6    was conducted in a judicial-like adversary proceeding before a retired judge that featured

7    at least seven status conferences, motions *in limine,* taking of testimony of witnesses,

8    including Defendant, with cross-examination as described below, a briefing schedule for

9    written closing arguments, the submission of deposition transcripts, a 26 page final award

10   that included detailed findings of fact and conclusions of law, and citations to witness

11   testimony under oath.   Declaration of Robert Kaplan and Exhibits A Through P In

12   Support of Defendant's Motion for Summary Judgment, ECF 81, Exhibit C; Declaration of

13   Stephen W. Cusick and Exhibits A Through FF In Opposition to Mr. Kaplan's Motion for

14   Summary Judgment, ECF 87, at Exhibit G, U and W.  The arbitration proceeding involved

15   the adjudicatory application of JAMS Comprehensive Arbitration Rules and Procedures to

16   a single set of facts.  Declaration of Robert Kaplan and Exhibits A Through P In Support

17   of Defendant's Motion for Summary Judgment, ECF 81, Exhibit C at 28.  Further, there is

18   nothing before the court to suggest that Mr. Kaplan had no incentive to vigorously litigate

19   the issues in the prior action.  To the contrary it was Mr. Kaplan, through FRI, who

20   initiated the arbitration proceeding.  Declaration of Stephen W. Cusick and Exhibits A

21   Through X in Support of Motion For Summary Judgment, ECF 39, Exhibit C.  Moreover,

22   there is nothing before this court to suggest that the judgment is inconsistent with

23   previous judgments for Mr. Kaplan on the matter, nor is there anything before the court to

24   suggest that Mr. Kaplan did not have certain procedural opportunities available to him in

25   the arbitration proceeding that could have readily caused a different result.  Mr. Kaplan

26   was a non-signatory party to the arbitration proceeding that was conducted by a retired

27   judge.  Mr. Kaplan had an opportunity to defend his interests and had consented to the

28   arbitration through his wholly owned entity, FRI.  As noted earlier, it is an uncontroverted

1    fact that FRI is Mr. Kaplan's business, and he was the president, sole shareholder and

2    sole employee of FRI.  *See* Plaintiffs' Uncontroverted Facts 4-8.  Even though Mr. Kaplan

3    is a "non-signatory" party as a matter of form, Mr. Kaplan is a signatory party as a matter

4    of substance; no other individuals besides Mr. Kaplan and his attorney were present at

5    the arbitration proceeding on FRI's behalf.  Accordingly, based on the foregoing, the court

6    determines that Mr. Kaplan had a full and fair opportunity to litigate the above-described

7    issues in the arbitration proceeding.

8         E.    Other Issue Preclusion Elements Under California Law

9        When determining the applicability of issue preclusion, in addition to the *Roos*

10    elements, the California courts also require that the issue sought to be precluded from

11    relitigation must have been actually litigated in the former proceeding and that the issue

12    must have been necessarily decided in the former proceeding.  *See, e.g., In re Harmon*,

13    250 F.3d 1240, 1245 (9th Cir. 2001), *citing*, *Lucido v. Superior Court*, 51 Cal. 3d 335

14    (1990).  Here, based on the arbitration award's detailed findings of fact and the other

15    arbitration proceeding documents before the court, the court determines that the above-

16    described issues were actually litigated.

17        The court also determines that the above-described issues were necessary to the

18    prior judgment as reflected in the conclusions of law and the final judgment thereon in the

19    arbitration proceedings.  Specifically, the issues of Mr. Kaplan's threats to Plaintiffs about

20    revealing Plaintiffs' confidential documents, Mr. Kaplan's meeting with Alaska Attorneys

21    Amodio and Singer, who represented interests adverse to Plaintiffs, which were clients of

22    his business, to sell confidential documents of his business's client, RRC, then providing

23    Attorney Singer the documents in exchange for $50,000, Mr. Kaplan's multiple instances

24    of perjury, and the resulting damage to Plaintiffs, were necessary to the final award of

25    $3,257,954.00 to RRC and $5,631,659.02 to Mr. Hackney and Hackney & Hackney, Inc.

26    collectively, both of which originally included $1,000,000.00 in punitive damage awards

27    that were later doubled pursuant to the final arbitration award based on a provision of the

28    arbitration agreement.

1

**LIABILITY UNDER 11 U.S.C. § 523(a)(4)**

2        Because the court determines that application of issue preclusion to certain

3 findings of fact made in the arbitration award is appropriate, the court now undertakes a

4 substantive analysis of Plaintiffs' claims under 11 U.S.C. §§ 523(a)(4) and (6).

5        As previously stated, embezzlement under § 523(a)(4) requires three elements:

6 property rightfully in the possession of a nonowner; nonowner's appropriation of the

7 property to a use other than which it was entrusted; and circumstances indicating fraud.

8 *In re Littleton,* 942 F.2d at 555.

9        Pursuant to a written agreement entered into by RRC with FRI, RRC provided FRI

10 with copies of bank deposit records for Renewable Resources Foundation, the non-

11 profit's donor lists and membership lists.  Plaintiffs' Uncontroverted Facts 9 and 12.

12 Accordingly, the court determines that the copies of bank deposit records, donor lists and

13 membership lists were rightfully in the possession of Mr. Kaplan, a non-owner of said that

14 property.  Thus, the first element of embezzlement under *In re Littleton* is satisfied.

15        Even though Mr. Kaplan was aware of their confidentiality, Mr. Kaplan sold those

16 donor lists, bank account information and contact lists to Alaska attorney Singer, an

17 agent for Plaintiffs' political adversary, for $50,000.  Plaintiffs' Uncontroverted Facts 13,

18 14, 15, 22-24, 26 and 27.  Accordingly, the court determines that by selling that

19 confidential information to Singer, Mr. Kaplan appropriated that property for a use other

20 than which it was entrusted.  Thus, the second element of embezzlement under *In re*

21 *Littleton* is satisfied.

22        Because the first two elements are met, the court is left to determine whether the

23 third element is met by undisputed facts showing circumstances that indicate fraud.

24 Other courts have held that there are circumstances indicating fraud when the debtor lies

25 about what they did with the appropriated property.  For example, in *In re Wada, supra,*

26 the Ninth Circuit Bankruptcy Appellate Panel held that there were circumstances

27 indicating fraud where the debtor-travel agent told the creditor-client that debtor-travel

28 agent was unable to refund approximately $84,000.00 of creditor-client's funds because

1   debtor-travel agent had incurred non-refundable deposits when in fact debtor-travel agent

2   never made those non-refundable deposits.  210 B.R. at 577.  In contrast, in *In re Eberts*,

3   607 Fed.Appx. 683 (9th Cir. BAP 2015), the Ninth Circuit Bankruptcy Appellate Panel

4   held that the bankruptcy court did not clearly err when the bankruptcy court found that

5   debtor was engaging in "sloppy business practices" without intent to defraud the creditor

6   when debtor was juggling funds among various productions the debtor was involved in.

7   607 Fed.Appx. at 685.  In so holding, the Ninth Circuit Bankruptcy Appellate Panel stated

8   that "the record does not support either a subjective motive to inflict injury on [creditor], or

9   a belief that such injury was substantially certain to result from his conduct."  *Id.* at 686.

10      Although Mr. Kaplan met with Alaskan Attorneys Amodio and Singer for the

11  purpose of selling them the confidential documents and to expose Gilliam and the

12  arbitration respondents to public and regulatory review, and attempt extortion in ongoing

13  settlement talks with Gilliam, Mr. Kaplan tried to conceal these purposes by lying in his

14  hearing testimony and deposition before the arbitrator that he met with Attorneys Amodio

15  and Singer to seek legal representation in the arbitration proceeding and then tried to

16  assert the attorney-client privilege.  Plaintiffs' Uncontroverted Facts 23-27, 37 and 40-42.

17  Additionally, Mr. Kaplan lied in his deposition that he never conveyed any documents to

18  Singer in exchange for $50,000, that he did not authorize release of those documents to

19  Singer's firm, that he did not know how RRC's documents got into APOC's hands and

20  wound up as exhibits to the APOC complaint, and that he did not know why he was

21  described in the complaint as a consultant for the Pebble Partnership.  Plaintiffs'

22  Uncontroverted Facts 36-38 and 40.  In fact, the arbitrator found that Mr. Kaplan on

23  behalf of FRI had received, modified, returned and signed an engagement letter to act in

24  precisely that capacity, and had so acted in reviewing the documents with Singer.

25  Plaintiffs' Uncontroverted Facts 28 and 40.

26      As in *Wada*, where the debtor-travel agent lied to the creditor-client about what the

27  debtor-travel agent did with the creditor-client's funds, here, Mr. Kaplan lied about what

28  he did with the documents and the surrounding circumstances.  Specifically, the arbitrator

26

found that Mr. Kaplan lied about the following: the reasons for meeting with Alaskan attorneys Amodio and Singer; whether he conveyed any of the documents to Singer in exchange for $50,000; whether he authorized release of those documents to Singer's firm; whether he knew how the documents got into APOC's hands and wound up in APOC's complaint; and why he was described as a consultant for the Pebble Partnership.  Further, unlike in *Eberts*, Mr. Kaplan was not engaging in "sloppy business practices."  Rather, Mr. Kaplan intentionally met with Amodio and Singer in order to sell out his clients by selling their confidential documents that he believed exposed various violations of Alaska campaign laws to attorney agents for their political adversaries. Plaintiffs' Uncontroverted Facts 23-24, 26-27 and 40.  Accordingly, the court determines that by lying about what Mr. Kaplan did with the documents and the surrounding circumstances, and by intentionally selling the confidential documents for purposes such as exposing his clients, RRC, Gilliam and others to prosecution of various violations of Alaska campaign laws, the undisputed facts show that the circumstances of his embezzlement of property entrusted to him indicated fraud.  Thus, the third element of embezzlement under *In re Littleton* is satisfied.

Based on the foregoing, the court determines that Plaintiffs have shown that there are no genuine issues of material fact and are entitled to judgment as a matter of law by a preponderance of the evidence on their claim under 11 U.S.C. § 523(a)(4) and that their motion for summary judgment on this claim should be granted.

## LIABILITY UNDER 11 U.S.C. § 523(a)(6)

As previously stated, the debt of an individual debtor arising from "willful and malicious injury by the debtor to another" or "to property of another" may be proven to be excepted from discharge under 11 U.S.C. § 523(a)(6).   An injury is "willful" "when it is shown that either the debtor had a subjective motive to inflict injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct."  *In re Jercich*, 238 F.3d at 1208.  "Willful" intent does not require that the debtor have had the specific intent to injure the creditor, if the act was intentional and the debtor knew that it

would necessarily cause injury.  *Id.* at 1207.  "Willful" means "voluntary" or "intentional," *Kawaahau v. Geiger*, 523 U.S. at 61 n.3, and so recklessness or negligence is insufficient; the debtor must not only have *acted* willfully, but also *inflicted the injury* willfully.  523 U.S. at 61-62, *citing* Restatement (Second) of Torts, § 8A, comment A.  The standard focuses on the debtor's subjective intent, and not "whether an objective, reasonable person would have known that the actions in question were substantially certain to injure the creditor."  *In re Su*, 290 F.3d at 1145-1146.

The "malicious" injury requirement is separate from the "willful" requirement.  *In re Su*, 290 F.3d at 1146.  An injury is "malicious" if it involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse."  *In re Jercich*, 238 F.3d at 1209, *citing Kawaahau v. Geiger, supra*.  This definition "does *not* require a showing of biblical malice, i.e., personal hatred, spite, or ill-will."  *In re Bammer*, 131 F.3d at 791.  The intent required is the intent to do the act at issue, not the intent to injure the victim.  *Id.*

A.    Willfulness

The undisputed facts show that Mr. Kaplan acted willfully within the meaning of 11 U.S.C. § 523(a)(6) because he had a "subjective motive to inflict injury."  Plaintiffs' Undisputed Fact 21 establishes that Mr. Kaplan made various threats which implied that he would reveal RRC's information— for example, "'Mr. Gillam, the primary contributor to the FRI campaign, had 'a lot of reasons' why he would not want the FRI emails to be made public' and – that Kaplan's terms for settlement better 'be accepted or [those] dire consequences . . . would follow.'"  On March 1, 2009, Mr. Kaplan sold various documents, including donor lists, bank account information, and contact lists obtained from RRC to Alaska Attorney Singer.  Plaintiffs' Undisputed Fact 27.  Mr. Kaplan threatened RRC with harm in an attempt to coerce his desired course of action, and then carried through on his threats when RRC did not cooperate.  These actions show that Mr. Kaplan had a "subjective motive to inflict injury" to Plaintiffs, and therefore satisfy the willfulness element for a 11 U.S.C. § 523(a)(6) claim.

28

B.    Malicious Injury

"A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Ormsby*, 591 F.3d at 1207, *quoting, In re Jercich*, 238 F.3d at 1209 (internal citations omitted)). The court rejects Plaintiffs' argument that conversion per se constitutes a willful and malicious injury.  Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Summary Judgment, ECF 128 at 21:15-22:16.  Plaintiffs rely on *In re Cecchini*, 780 F.2d 1440, 1443 (9th Cir.1986) for this argument, but that case is no longer good law on this point —*In re Su* and *In re Jercich* provide the controlling authority on 11 U.S.C. § 523(a)(6), as recognized by the Ninth Circuit's decision in *In re Peklar*, 260 F.3d 1035, 1037 (9th Cir. 2001), which stated "we believe that the reach of *Cecchini* was necessarily limited by the Supreme Court's decision in *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998)."

Nonetheless, the undisputed facts show that Mr. Kaplan was provided with all of the documents in question in the course of his retention by RRC to enable him to perform his contractual duties, that Richard Jameson of RRC had specifically discussed with Mr. Kaplan that the subject documents were highly confidential, that RRC designated its membership and donor information as confidential instructions to staff and on its website, that FRI had contracted with RRC to keep the documents in confidence and to use the documents only in connection with the services to be provided under the contract, that Mr. Kaplan, as a professional political consultant, considered himself ethically bound to not reveal confidential information obtained during his professional relationship, and that despite all of the foregoing, Mr. Kaplan sold the confidential documents for $50,000 to Alaska attorney Singer, who then used those confidential documents in a complaint filed before the Alaskan Public Officials Commission against RRC, Robert Gilliam and others. Plaintiffs' Uncontroverted Facts11-16, 22-24, 26 and 28-30.  Accordingly, the court determines that Mr. Kaplan's act was wrongful.

1    The undisputed facts also show that Mr. Kaplan's act of selling the confidential

2    documents to Attorney Singer was done intentionally.  As demonstrated above, Mr.

3    Kaplan made various threats which implied that Mr. Kaplan would reveal RRC's

4    information and that if Mr. Kaplan's terms for settlement were not accepted, dire

5    consequences would follow.  Plaintiffs' Uncontroverted Facts 21.  Accordingly, the court

6    finds that Mr. Kaplan's act was intentional.

7    The undisputed facts further show that Mr. Kaplan's act of selling the confidential

8    documents to Attorney Singer necessarily caused injury.  The arbitration award stated

9    that it found an "inescapable inference" that the APOC complaint, which incorporated the

10    confidential documents, and public investigation, was a causal event that contributed to

11    the cancellation of $386,300 in grant funds to RRC and loss of clients and revenues to

12    Hackney & Hackney, Inc., for which the arbitrator awarded the amount of $1,070,301.68.

13    Plaintiffs' Uncontroverted Fact 33.  Accordingly, the court finds that Mr. Kaplan's act

14    necessarily caused injury to Plaintiffs.

15    Finally, the undisputed facts show that the act was done without just cause or

16    excuse.  The court finds that there is no just cause or excuse for Mr. Kaplan selling his

17    clients' confidential documents to his clients' opponents for use against his clients.

18    Further, the court observes that Mr. Kaplan's perjury regarding his act of selling the

19    documents evidences that Mr. Kaplan himself did not believe he had a just cause or

20    excuse for doing so.  Accordingly, the court determines that Mr. Kaplan's act of selling his

21    clients' confidential documents to their political opponents for use against them was done

22    without just cause or excuse.

23    Based on the foregoing, the court determines that Plaintiffs have shown that there

24    are no genuine issues of material fact and are entitled to judgment as a matter of law by

25    a preponderance of the evidence on their claim under 11 U.S.C. § 523(a)(6) and that

26    their motion for summary judgment on this claim should be granted.

27    **DAMAGES**

28    The arbitration award examined damages sought by RRC under five categories:

> (1) for the value of [RRC's] documents, an asset, converted by Kaplan and FRI for their own purposes; (2) for legal expenses incurred in redacting the documents, as authorized by the administrative law judge after the APOC complaint was filed; (3) for defending against APOC charges that would not have been brought, but for the Kaplan-released documents; (4) for loss of the last installment of a July 2008 Moore Foundation grant, in the amount of $376,300; and (5) for the loss of expected renewal grants.

JAMS Final Award, Exhibit C to ECF 81 at 16.

The Arbitrator awarded $50,000 in damages for the first category, constituting "unjust enrichment of FRI". The Arbitrator awarded full damages for the second category, and directed RRC to itemize those expenses, fees, and costs and to incorporate those into RRC's request for recovery as prevailing party. The Arbitrator declined to award specific damages for the third category because to do so would have been "entirely speculative". The arbitrator awarded $386,300 for the fourth category. The Arbitrator did not award any damages for the fifth category because RRC did not meet its burden to produce evidence supporting its claim for damages in this category.

In total, the Arbitrator awarded RRC $436,300 in compensatory damages and $156,804 in attorneys' fees and $32,704 in expenses, and $3,169 in redaction expenses as the prevailing party.

The Arbitrator examined damages sought by the Mr. Hackney and Hackney & Hackney, Inc. and awarded $1,011,681.68 in compensatory damages for the loss of clients experienced by them after the filing of the March 2009 APOC complaint. The arbitrator also determined that Mr. Hackney and Hackney & Hackney, Inc. were entitled to recover $56,120.30 in attorneys' fees incurred in responding to the APOC investigation and $2,500 related to an advance deposit provided to FRI under the terms of the Consulting Agreement. Because of a lack of supporting documentation, the arbitrator did not award an overpayment of $2,860 of commissions allegedly paid by Mr. Hackney and Hackney & Hackney, Inc. to Mr. Kaplan. The arbitrator also awarded Mr. Hackney and Hackney & Hackney, Inc. $675,758.76 in attorneys' fees and $69,768.77 in expenses as the prevailing party in the arbitration.

1    The arbitrator awarded $2 million in punitive damages, one million each to RRC

2  and Mr. Hackney and Hackney & Hackney, Inc.

3    The arbitrator then doubled the previously mentioned awards because the

4  governing Consulting Agreement provision for arbitration specifically authorized the

5  arbitrator to double the award if not timely paid, i.e., within 30 days of the award.  In sum,

6  the arbitrator's final award imposed awarded $3,257,954.00 to RRC and $5,631,659.02

7  to Mr. Hackney and Hackney & Hackney, Inc.

8    However, the court does not determine that the entire award by the arbitrator

9  should be determined to be dischargeable.  As determined by the arbitrator, the true

10  compensatory damages suffered by Plaintiffs were $628,977 for RRC and $1,815,829.51

11  for Mr. Hackney and Hackney & Hackney, Inc., which includes attorneys' fees, costs and

12  redaction expenses, and the punitive damages awarded to Plaintiffs were $1 million to

13  RRC and $1 million to Mr. Hackney and Hackney & Hackney, Inc..  Then, the arbitrator

14  doubled these amounts based on the contractual provision in the arbitration agreement if

15  the actual award was not paid within 30 days, and the court determines that the doubling

16  of the award does not accurately reflect the actual damages suffered by Plaintiffs which

17  would be determined to be nondischargeable under Plaintiffs' claims under 11 U.S.C. §§

18  523(a)(4) and (6).  Thus, the court determines that the singled, not doubled, award by the

19  arbitrator reflecting the actual damages suffered by Plaintiffs should be considered

20  nondischargeable debts.  *See, e.g., Cohen v. de la Cruz,* 523 U.S. 213, 223 (1998) (""the

21  text of § 523(a)(2)(A), the meaning of parallel provisions in the statute, the historical

22  pedigree of the fraud exception, and the general policy underlying the exceptions to

23  discharge all support our conclusion that 'any debt . . . for money, property, services, or .

24  . . credit, to the extent obtained by' fraud encompasses any liability arising from money,

25  property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and

26  other relief that may exceed the value obtained by the debtor."; *In re Suarez*, 400 B.R.

27  732, 738 (BAP 9th Cir. 2009), *aff'd*, 529 Fed.Appx. 832 (9th Cir. 2013) ("Established case

28  law holds that a debtor's obligation for attorneys fees and costs is excepted from

1  discharge under section 523(a)(6) as a 'debt for' debtor's willful and malicious injury when

2  awarded by the state court 'with respect to' or 'by reason of' the same underlying conduct

3  that precluded discharge of the underlying compensatory damages award."); *In re*

4  *Roussos*, 251 B.R. 86, (BAP 9th Cir. 2009) ("[A]ttorneys' fees and costs, if awardable

5  under state law, are also part of the nondischargeable debt. We have also affirmed a

6  bankruptcy court's decision to apply collateral estoppel to an award for punitive damages,

7  in a § 523(a)(6) adversary proceeding, even though the state court did not make specific

8  findings on which to predicate the award.  Thus, a nondischargeable 'debt' may include

9  prejudgment interest, attorneys' fees and costs, and punitive damages, not all of which

10 are actual out-of-pocket losses of the creditor due to the fraud, but all of which arise from

11 the debtor's liability for the fraudulent conduct.") (internal citations omitted).

12      Because the arbitration award "dispose[ed] of every factual issue raised by the

13 claim and counterclaims" and because the awards were based on the malicious and

14 fraudulent conduct of Mr. Kaplan, the court determines that the singled (not doubled)

15 arbitration award representing actual damages is non-dischargeable under both 11

16 U.S.C. §§ 523(a)(4) and (a)(6).

17 **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

18      Because Plaintiffs have shown that they are entitled to judgment as a matter, and

19 thus, that Defendant is not entitled to judgment as a matter of law, the court denies

20 Defendant's Motion for Summary Judgment with prejudice.

21      Regarding Defendant's Motion to Dismiss, ECF 171, Defendant seeks dismissal of

22 this adversary proceeding for the following reasons: (1) because the claims as pled in the

23 Modified Second Amended Complaint substantially exceed the specifically defined and

24 limited scope of leave to amend; (2) because the Plaintiffs' claims are time-barred; and

25 (3) because Plaintiffs' claim for embezzlement under 11 U.S.C. § 523(a)(4) fails to state a

26 claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of

27 Civil Procedure.

28

1   First, as previously discussed, the court determines that claims as pleaded in the

2   Modified Second Amended Complaint do not substantially exceed the specifically limited

3   scope by which leave to amend was granted.  Any extent by which the claims other than

4   the 11 U.S.C. § 523(a)(4) claim were amended was not considered by the court.

5   Second, as also previously discussed, the court determines that Plaintiffs' claims are not

6   time-barred.  Finally, because the court determines that Plaintiffs' Modified Second

7   Amended Complaint pleads sufficient facts upon which relief for embezzlement can be

8   granted, which the court does as previously discussed, the court denies Defendant's

9   request under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Accordingly, the

10  court should deny Defendant's Motion to Dismiss with prejudice.

11  **DEFENDANT'S EX PARTE MOTION TO STRIKE AND DEFENDANT'S RESPONSE**

12  **TO PLAINTIFF'S SUPPLEMENTAL REPLY RE PLAINTIFFS' MOTION FOR**

13  **SUMMARY JUDGMENT**

14  On February 24, 2016, Defendant filed his Supplemental Opposition to Plaintiff's

15  Motion for Summary Judgment.  ECF 174.  On February 26, 2016, Plaintiffs filed a reply

16  thereto.  ECF 176.  On March 9, 2015, Defendant filed its Ex Parte Motion to Strike and

17  Defendant's Response to Plaintiffs' Supplemental Reply re Plaintiffs' Motion for Summary

18  Judgment ("Motion to Strike").  ECF 177.

19  Because none of the arguments and authorities in Plaintiffs' reply, ECF 176, that

20  Defendant argues violate Local Bankruptcy Rule 9013-1(g)(1) and (g)(4) were considered

21  by the court, the court denies Defendant's Motion to Strike.

22  ///

23

24

25

26

27

28

34

### CONCLUSION

For the foregoing reasons, the court should grant Plaintiffs' motion for summary judgment and should deny Defendants' cross-motions for summary judgment, to dismiss and to strike.  A separate order and a judgment for granting and denying relief will be entered concurrently.

IT IS SO ORDERED.

###

Date: April 1, 2016

_____

Robert Kwan
United States Bankruptcy Judge